Electronically Filed
Intermediate Court of Appeals
CAAP-18-0000294
23-APR-2019
07:50 AM

NO. CAAP-18-0000294

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee, v.
ARNET D. PERSONS, Defendant-Appellant

APPEAL FROM THE DISTRICT COURT OF THE FIRST CIRCUIT
(HONOLULU DIVISION)
(CASE NO. 1DCW-17-0002602)

SUMMARY DISPOSITION ORDER
(By: Fujise, Presiding Judge, Leonard and Reifurth, JJ.)

Defendant-Appellant Arnet D. Persons (**Persons**) appeals

from the Notice of Entry of Judgment and/or Order, filed on March

6, 2018, in the District Court of the First Circuit, Honolulu

Division (**District Court**).[1] Persons was convicted of Violation

---

[1] The Honorable Russel S. Nagata presided at trial.

of a Restraining Order or Injunction Against Harassment, in

violation of Hawaii Revised Statutes (**HRS**) § 604-10.5(i) (2016),[2]

---

2/   HRS § 604-10.5 states, in relevant part:

      **§ 604-10.5 Power to enjoin and temporarily restrain harassment.**  (a)  For the purposes of this section:

      "Course of conduct" means a pattern of conduct composed of a series of acts over any period of time evidencing a continuity of purpose.

      "Harassment" means:

(1)    Physical harm, bodily injury, assault, or the threat of imminent physical harm, bodily injury, or assault; or

(2)    An intentional or knowing course of conduct directed at an individual that seriously alarms or disturbs consistently or continually bothers the individual and serves no legitimate purpose; provided that such course of conduct would cause a reasonable person to suffer emotional distress.

. . . .

      (i)  A knowing or intentional violation of a restraining order or injunction issued pursuant to this section is a misdemeanor. The court shall sentence a violator to appropriate counseling and shall sentence a person convicted under this section as follows:

(1)    For a violation of an injunction or restraining order that occurs after a conviction for a violation of the same injunction or restraining order, the person shall be sentenced to a mandatory minimum jail sentence of not less than forty-eight hours; and

(2)    For any subsequent violation that occurs after a second conviction for violation of the same injunction or restraining order, the person shall be sentenced to a mandatory minimum jail sentence of not less than thirty days.

      The court may suspend any jail sentence, except for the mandatory sentences under paragraphs (1) and (2), upon appropriate conditions, such as that the defendant remain alcohol- and drug-free, conviction-free, or complete court-ordered assessments or counseling. The court may suspend the mandatory sentences under paragraphs (1) and (2) where the violation of the injunction or restraining order does not involve violence or the threat of violence. Nothing in this section shall be construed as limiting the

(continued...)

and Harassment, in violation of HRS § 711-1106(1)(a) (2014).[3]

Persons raises two points of error on appeal, contending that: (1) the District Court erred because the court's colloquy was insufficient to obtain a knowing, intelligent, and voluntary waiver of Persons's right to a jury trial; and (2) there was insufficient evidence to convict Persons of the subject offenses.

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Persons's points of error as follows:

(1)    Persons contends that the District Court failed to obtain a valid on-the-record waiver of his right to a jury trial because the District Court's colloquy was insufficient.[4] Specifically, Persons argues that:  "the district court created a confusing and distracting atmosphere by allowing the court clerk to call the following case during Persons's colloquy;" the

---

[2]    (...continued)
discretion of the judge to impose additional sanctions authorized in sentencing for a misdemeanor offense.

[3]    HRS § 711-1106(1)(a) states:

§ 711-1106 Harassment.   (1)   A person commits the offense of harassment if, with intent to harass, annoy, or alarm any other person, that person:

(a)    Strikes, shoves, kicks, or otherwise touches another person in an offensive manner or subjects the other person to offensive physical contact;

[4]    The Honorable Trish K. Morikawa presided.

3

District Court did not present the concept of a jury trial in logical segments; the District Court merely read an abbreviated advisement without engaging Persons in a dialogue after each segment; when the issue of a surveillance video arose, it should have been obvious Persons did not understand his right to a jury trial versus a non-jury trial; and the District Court did not ask Persons to explain his understanding of a jury trial.

The validity of a criminal defendant's waiver of the right to a jury trial is a question of constitutional law, which is reviewed under the right/wrong standard. State v. Friedman, 93 Hawai'i 63, 67, 996 P.2d 268, 272 (2000) (citation omitted). "A waiver is the knowing, intelligent, and voluntary relinquishment of a known right." Id. at 68, 996 P.2d at 273 (citation omitted). "Whether a waiver was voluntarily and intelligently undertaken, this court will look to the totality of facts and circumstances of each particular case." Id. at 68-69, 996 P.2d at 273-74 (citation omitted). The defendant's background, experience, and conduct is taken into account under the totality of the circumstances. State v. Gomez-Lobato, 130 Hawai'i 465, 470, 312 P.3d 897, 902 (2013). "Where it appears from the record that a defendant has voluntarily waived a constitutional right to a jury trial, the defendant carries the burden of demonstrating by a preponderance of the evidence that his/her waiver was involuntary." Friedman, 93 Hawai'i at 69, 996 P.2d at 274 (citation omitted).

Here, Persons signed a Waiver of Jury Trial form that waived his right to a jury trial and separately affirmed that he read the form, went over the form with his attorney, as well as his right to a jury trial, and no one was forcing him to give up his right to a jury trial. The District Court inquired about Person's age, whether he could read, write, and understand English, whether he had taken any medication or drug in the last twenty-four hours, whether he was under treatment for a mental or emotional disability, and whether his mind was clear. In a series of questions and answers, Persons separately affirmed he understood the District Court's statements that no one could take away his right to a jury trial, a jury would be made up of twelve people from the community that would decide his guilt or innocence, all twelve jurors had to find him guilty beyond a reasonable doubt to convict him, he could help pick the people on the jury, if he gave up the right to a jury a trial would be held before a judge, and he could not later change his mind if he waived the right to a jury trial. Therefore, it appears from the record that Persons voluntarily waived his right to a jury trial and thus, he has the burden to demonstrate by a preponderance of the evidence that his waiver was involuntary.

First, prior to the District Court's colloquy with Persons, the transcript includes that an unidentified male voice stated, "Do you mind if I call number 6?" and an unidentified female voice stated, "No, I don't." Persons claims this

demonstrates the District Court allowed another case to be called while conducting a colloquy with Persons, thereby causing confusion. However, the portions of the transcript immediately prior to and following the above statements are attributed to the District Court, none of which are characterized as an "unidentified" female voice. Moreover, there is no indication that the court went off the record in this case and then resumed the proceeding. Nor had the District Court begun to question Persons about his jury waiver. Thus, although unidentified voices were briefly picked up on the audio file that was transcribed, it does not appear from the record that the District Court authorized another case to be called during its colloquy with Persons. Further, it does not appear that any other case was actually called. And finally, there is nothing in the record indicating that the District Court's colloquy with Persons was interrupted by or interspersed with any other proceeding.

Second, the record indicates Persons responded affirmatively after each inquiry by the District Court. Persons's claim that the District Court did not present the concept of a jury trial in logical segments or that the court merely read an abbreviated advisement without engaging Persons in a dialogue after each segment is without merit.

Third, Persons's question to the court about a video tape occurred after the District Court asked Persons if he had any questions, in the context of a waiver of his jury trial

6

right.    Persons responded that he was concerned about how long it was taking to *subpoena* a video tape of the incident because "that would exonerate me."  The District Court indicated that the court was glad Persons had a concern and that he should raise the issue with his attorney.  Persons responded that he had.  The District Court then turned the discussion back to the question of Persons's waiver, stating, "But does that concern in any way affect your ability as to whether or not you wanna waive your right to a jury trial?"  Persons responded, "No, as long as you can see it, you'll understand that it's the truth."  The District Court again asked Persons if he had any further questions and he responded in the negative.  We reject Persons's assertion that his inquiry about the video tape indicated that he was confused about his right to a jury trial and further examination by the court was therefore warranted.

In sum, based on the totality of the circumstances, we conclude that the District Court did not err when it concluded that Persons's waiver of his right to a jury trial was knowing, intelligent, and voluntary.

(2)   The Hawai'i Supreme Court has long held that, when reviewing the record for the sufficiency of the evidence supporting a conviction, the evidence adduced at trial must be considered in the strongest light for the prosecution.  State v. Matavale, 115 Hawai'i 149, 157, 166 P.3d 322, 330 (2007).

Here, Persons contends that, notwithstanding that it was the province of the District Court to determine the credibility of Persons and the Complaining Witness (**CW**), "it is unclear" how the District Court found the CW's testimony credible in light of the video recording received into evidence. Persons argues that the recording did not show Persons throwing coffee at the CW. However, in his Opening Brief, Persons acknowledges that the alleged incident "occurred behind a pillar" and therefore was not captured on the video. After the alleged incident, the video shows an individual who appears to be Persons running from the scene; Persons testified that he ran away because he does not like to fight and in the haste of getting away, his coffee spilled. However, the video evidence is inconclusive, neither inculpatory or exculpatory, as it does not show what happened when Persons interacted with the CW. It does not show what happened to the coffee that Persons was carrying when he left the building.

Persons does not dispute he was served with a copy of an Injunction Against Harassment, dated October 20, 2015. The Injunction Against Harassment was effective for three years from October 20, 2015. It stated that Persons was restrained from contacting, threatening, or harassing the CW and that any knowing or intentional violation was a misdemeanor.

The CW testified that on July 16, 2017, Persons yelled at him "you fuckin' punk" and then threw a cup of coffee on him

which hit his eye while they were outside of the residential building where they both lived. The CW further testified that, prior to throwing the coffee, Persons removed the lid of the cup; after throwing the coffee, Persons ran toward a different building. The CW did not give Persons permission to throw coffee on him. The District Court found the CW credible. Thus, we cannot conclude that the District Court clearly erred in finding and concluding that Persons subjected the CW to offensive physical contact by throwing coffee on him, and that Persons acted with the intent to harass, annoy, or alarm the CW. Therefore, there was sufficient evidence to support Persons's conviction for Harassment.

There is also substantial evidence in the record that Persons knew that he was prohibited from harassing the CW for a period of three years, beginning on October 20, 2015, after being served with a copy of an Injunction Against Harassment, and that Persons harassed the CW on July 16, 2017, within the three year time period. Throwing coffee on someone can constitute harassment pursuant to HRS § 604-10.5(a). Again, based upon the CW's account of Persons's conduct, and the inferences fairly drawn from all the circumstances, we cannot conclude that the District Court clearly erred in finding and concluding that Persons knowingly or intentionally violated the Injunction Against Harassment because, although both Persons and the CW lived in the same building and were in the same elevator prior to

the incident, there was testimony that the CW had not noticed Persons until they left the elevator and Persons initiated contact by swearing at the CW and then throwing coffee on him. Therefore, we conclude that the District Court did not err in finding and concluding that there was sufficient evidence to support Persons's conviction for Violation of a Restraining Order or Injunction Against Harassment.

For these reasons, the District Court's March 6, 2018 Notice of Entry of Judgment and/or Order is affirmed.

DATED: Honolulu, Hawai'i, April 23, 2019.

On the briefs:

James S. Tabe,
Deputy Public Defender,
for Defendant-Appellant.

Chad Kumagai,
Deputy Prosecuting Attorney,
City and County of Honolulu,
for Plaintiff-Appellee.

Presiding Judge

Associate Judge

Associate Judge